**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
**G&G Closed Circuit Events LLC,**                  )
                          **Plaintiff,**            )
                                                    )
          **v.**                                    )        **Civ. Act. No. 15-40003-TSH**
                                                    )
                                                    )
**Danilo E. Duarte, Javier Sanchez, and**           )
**Danana, Inc.,** *dba La Raza*.                    )
                          **Defendants.**           )
_____)


### DECISION ON MOTIONS FOR DEFAULT JUDGMENT
**March 25, 2016**


**HILLMAN, D.J.,**


### Background

      G&G Closed Circuit Events, LLC ("G&G Events") has filed suit against defendants

Danilo E. Duarte ("Duarte"), Javier Sanchez ("Sanchez")  and Danana, Inc. ("Danana, Inc." and,

together with Duarte and Sanchez, "Defendants") alleging that on October 20, 2012, their

commercial establishment, La Raza, unlawfully intercepted, received, published, divulged,

displayed and/or exhibited *Danny Garcia v. Erik Morales II, Light Welterweight Fight Program*

("Program")[1]. G&G Events alleges claims against Defendants for violation of the

Communications Act of 1934, 47 U.S.C. § 605 ("§ 605")*, et seq.* (Count I), The Cable &

Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553, *et seq.* ("§553")

(Count II)*,* the Massachusetts Consumer Protection Act, Mass.Gen.L. ch. 93A, §§2,11 ("Chapter

---

[1] In addition to the *Garcia/Morales* fight, the Program included various under-card bouts and fight
commentary.

93A") (Count IV), and a state common law claim for conversion (Count III). G&G Events seeks statutory damages, actual damages and costs (including attorneys' fees). Additionally, G&G Events alleges that Defendants acted willfully or knowingly and therefore, it is entitled to multiple damages.

Danilo Duarte was served on January 13, 2015 and was required to answer by February 3, 2015. Danana, Inc., Inc. was served on January 20, 2015 and was required to answer by February 10, 2015. Javier Sanchez was served on February 24, 2015 and was required to answer by March 17, 2015[2]. To date, none of the Defendants has filed an Answer or otherwise appeared in the case. On February 19, 2015, the Clerk of the Court entered Default against Duarte and Danana, Inc. (Docket No. 9) and that same date, the Court entered its Standing Order Regarding Motions For Default Judgment as to those Defendants (*see* Docket No. 10)("Standing Order"). The Standing Order required that G&G Events file a Motion for Entry of Default Judgment pursuant to Fed. R. Civ. P. 55(b) within 30 days. On March 24, 2015, G&G Events filed its Motion for Default Judgment (Docket No. 14) against Duarte and Danana, Inc.[3] On March 26, 2015, the Clerk of Court entered Default against Sanchez (Docket No. 21). However, the Court did not issue its Standing Order with respect to Sanchez and therefore, as to him, there was no time limit by which G&G Events had to file a motion for default judgment. On November 5, 2015, G&G Events filed a motion to amend its initial motion for default judgment to include

---

[2] A Worcester County Deputy Sherriff served copy of the Summons and Complaint on Danilo E. Duarte and Javier Sanchez by leaving a copy at their places of residence in Worcester, MA and by mailing a copy of the same to those residences via first class mail. A Worcester County Deputy Sherriff served copy of the Summons and Complaint on Danilo Duarte, as agent at the time of service for Danana, Inc., in hand at 10 Ancona Road, Worcester, MA. Therefore, from the four corners of the Docket service appears to have been proper. *See* Fed.R.Civ.P. 4 (e)(1); Mass.R.Civ.P. 4(d)(1).

[3] The motion for default judgment was actually due on Monday, March 23, 2015; the Court excuses the late filing on the grounds that the delay was minimal and no party was prejudiced thereby.

Sanchez (*see* Docket No. 24). That motion has been granted and therefore, this Decision addresses whether default judgment shall be entered against all Defendants.

For the reasons set forth below, the motion to enter default judgment against the Defendants is *granted*. G&G Events shall recover $5,860.05 in damages (including enhanced damages), costs and attorneys' fees.

## Discussion

### Facts

G&G Events was granted the exclusive nationwide commercial distribution (close-circuit) rights to the Program. G&G Events entered into sublicensing agreements with various commercial entities in Massachusetts and elsewhere by which it granted these entities the right to publicly exhibit the Program within their respective commercial establishments. Defendants' establishment, La Raza, never lawfully licensed the Program from G&G Events and unlawfully intercepted and exhibited the Program on October 20, 2012. The fight was broadcast on one of the two 45" flat screen televisions hanging on the right wall above the bar area. An investigator for G&G Events observed what he described as a "silver color cable box" in between the two flat screen TVs.  The investigator also provided pictures of the back of the establishment which show a satellite dish affixed to the building.  The investigator also observed 15-18 people in the bar at the time of the intercepted broadcast, and overheard various individuals in the bar area discussing the main event. *See Affidavit of Manuel Aranibar* (Docket No. 16). The maximum occupancy for the establishment is unknown. The sublicense fee would have been $600. *See Plaintiffs Affidavit* (Docket No. 15), at ¶8.

### Entry of Default Judgment

The Court has reviewed Plaintiff's Complaint, which requests money damages and costs (including attorneys' fees). The Defendants, as a defaulting party, are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999). The Court has also reviewed Plaintiff's motion for entry of default judgment and supporting memorandum, as well as the accompanying affidavits. The Court is satisfied that the allegations are sufficient to support the entry of default judgment and more particularly, that Defendants are not infants, incompetent, or in military service of the United States, and that they caused G&G Events' damages and owes any costs incurred. A hearing has not been held on G&G Events' motion for default judgment. The primary issue before the Court is how damages should be assessed against the defaulting Defendants. The Court must determine Defendants' liability for each claim and must then assess damages by considering the type and amount of damages to be awarded, including whether enhanced damages, attorneys' fees and costs are appropriate.

### Plaintiff's Claims For Statutory Damages Under 4 U.S.C. §§553 and 605

Plaintiff asserts a claim under the Communications Act of 1934, 47 U.S.C. § 605 *et. seq.* and The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. §553, *et seq.* Sections 605 and 553 are similar, however, §605 provides for mandatory recovery of costs and attorneys' fees while under §553, recovery of such damages is discretionary. G&G Events acknowledges that First Circuit's ruling in *Charter Commc'ns Entm't I v. Burdulis*, 460 F.3d 168, 172-78 (1st Cir. 2006) suggests that §605 does not encompass Defendant's alleged wrongful conduct, *i.e.*, interception of the transmission of the Program, because the conduct does not amount to unauthorized receipt of radio communications. G&G Events argues, however, that the conduct in this case is more analogous to the conduct in *PPV Connection, Inv. v. Rodriguez*,

4

607 F.Supp.2d 301 (D.Puerto Rico 2009), in which the district court in Puerto Rico found that a licensed distributor of pay-per-view programming (such as Plaintiff) that sends its programs to commercial buyers via cable wire or direct satellite can seek relief under §605, because such programming can be transmitted over satellite or radio.

Circuit Courts are split as to the applicability of §605 and §553 to allegations involving the theft of cable services.[4] Section 553 provides, in relevant part, that "no person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by a cable operator… " 47 U.S.C. §553(a)(1). Section 605, on the other hand, provides that "[n]o person receiving … any interstate or foreign communications by wire or radio shall divulge or publish the existence, contents, substance purport, effect, or meaning thereof… ." 47 U.S. C. §605(a). Some courts have interpreted Section 553 as applying where a commercial establishment intercepts a cable signal and § 605 as applying where a commercial establishment intercepts a satellite broadcast. *See J&J Sports Productions, Inc. v. Mosley*, No. C-10-5126 CW (EMC), 2011 WL 2066713 (N.D. Cal. Apr. 31, 2011) and cases cited therein; *see also J&J Sports Productions, Inc. v. Chacko*, Civ.Act. No. 1:13-CV-1977-CC, 2013 WL 6190603 (N.D. GA. Nov. 25 (2013) (noting that Third and Seventh Circuits have taken position that §553 convers interception of cable programming transmitted over cable network and §605 covers cable transmissions as they travel through the air, *i.e.*, satellite transmissions). Other courts have interpreted the act of intercepting cable and/or satellite signals as violating both §533 and § 605. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2[d] Cir. 1996); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F.Supp.2d

---

[4] At the same time, it is clear that a plaintiff cannot recover under both statutes for a single violation. *See J&J Sports Productions, Inc. v. Mendoza-Govan,* 2011 WL 1544886, at 7 (N.D.Cal. Apr. 25, 2011); *Joe Hand Promotions, Inc. v. Willis*, No. 5:08CV276, 2009 WL 369511 (N.D. Oh. Feb. 11, 2009).

659 (E.D.Va. 2013). The prevailing view in this District, based on the First Circuit's decision in *Burdulis*, is that §553 applies to theft of cable services while § 605 applies to theft of satellite services. This is the view which I find persuasive.

G&G Events has alleged a violation of both §553 and 605. While it is clear that Defendants' establishment necessarily intercepted either a cable or satellite broadcast, it is impossible to determine from the affidavits submitted in support of its motion for default judgment whether Defendants' establishment utilized a satellite dish or cable box. While a satellite dish can be seen in the included picture of the establishment, the private investigator mentions seeing a "silver cable box."  Therefore, it is impossible to determine the mode of interception. Therefore, on this record, the Court will assume that Defendants violated §553 by intercepting a cable program over a cable network.

### Assessment of Damages Under §553

Section 553 provides for assessment of damages as follows:

> [d]amages awarded by any court under this section shall be computed in accordance with either of the following clauses: (i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing actual damages ...; or (ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

47 U.S.C. § 553(3)(A). Additionally, where the violations were "committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." *Id.*, § 553(c)(3)(B).

Based on the record before me, I find that Defendants are liable for a single violation of §553. That is, the facts are sufficient to establish that they or their agents intercepted and displayed a transmission of the Program at their commercial establishment, La Raza, when they

were not entitled to do so in violation of 47 U.S.C. §553. The maximum statutory damages which G&G Events would be entitled to recover is $10,000. In this case, there were anywhere from 15-18 individuals in the establishment while the Program was being broadcast, the Program was displayed on one television screen and there is no evidence that Defendants charged a cover fee. The individuals within the establishment were discussing the Program at the time of broadcast. Under these circumstances, I am awarding G&G Events actual damages in the amount of $600, which it would have been entitled had Defendants paid it the appropriate sublicensing fee.

G&G Events also seeks enhanced damages on the grounds that Defendants' violation was willful and for the purpose of commercial advantage or private financial gain. Based on the record before me, I find that G&G Events has established that Defendants' interception of the cable signal was necessarily intentional and that it was done for purpose of commercial advantage or private gain, that is, it was done to induce patrons into the establishment in order to sell food and/or beverages. Additionally, this is also not the Defendants first violation. Therefore, I am awarding G&G Events an additional $3,500 in enhanced damages.

### Attorneys' Fees; Costs of Suit

Pursuant to Section 553(c)(2)(C), the Court has discretion to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." G&G Events has established that it has incurred $1,250 in attorneys' fees. Based on the affidavit of G&G Events' counsel, Patricia Szumowski, I find the hours expended (five) to be reasonable for this matter and the rate charged ($250 per hour) to be comparable to that charged by attorneys with like experience in this geographic area. Therefore, G&G Events is awarded attorneys' fees in the amount of $1,250.00. In addition, costs are awarded against Defendants in the amount of

the $510.05 expended by G&G Events for filing and service costs. *See Affidavit of Patricia A. Szumowski* (Docket No. 17).

Plaintiff's Chapter 93A Claim

I agree with those courts in this District that have found that for purposes of Chapter 93A, it is an unfair business practice for a commercial establishment to intercept a cable signal and exhibit a sports program. *See Joe Hand Promotions, Inc. v. Patton*, Civ.Act. No. 10-40242-FDS, 2011 WL 6002475 (D.Mass. Nov. 29, 2011) and case cited therein. However, an award of enhanced damages and attorneys' fees under Chapter 93A would be duplicative. *Id.*

Plaintiff's Conversion Claim

G&G Events has also asserted a state law claim for conversion. Some courts have held that a state law conversion claim is barred on preemption grounds under the Federal Communications Act and/or the Copyright Act. *See Id.* It is not necessary for me to determine what the First Circuit would hold on this issue, because the damages awarded to G&G Events under Section 553 are sufficient to compensate it for its loss and therefore, as with the Chapter 93A claim, any award of damages for conversion would be duplicative.

**Conclusion**

The Motion For Default Judgment (Docket No. 14) is ***granted***. The Clerk shall enter the Default Judgment in favor of G&G Close Circuit Events LLC as follows:

1. Compensatory damages in the amount of $600,

2. Damages for a willful violation in the amount of $3,500,

3. Attorneys' fees in the amount of $1,250, and

4. Costs in the amount of $510.05.

The clerk is directed to enter judgment for G&G Close Circuit Events LLC in the total amount of $5,860.05, with prejudgment interest as provided by law on the damages awards.


/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**